# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

July 2, 2014

LETTER TO COUNSEL:

> RE:   *Wayne Leek v. Commissioner, Social Security Administration*;
>        Civil No. SAG-13-2155

Dear Counsel:

On July 25, 2013, the Plaintiff, Wayne Leek, petitioned this Court to review the Social Security Administration's final decision to deny his claim for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 20, 24). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Mr. Leek filed claims for Disability Insurance Benefits and Supplemental Security Income on July 8, 2010, alleging disability beginning in March of 2003.[1] (Tr. 173-83). His claims were denied initially on January 7, 2011, and on reconsideration on August 5, 2011. (Tr. 108-17, 120-33). A hearing was held on March 29, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 37-103). Following the hearing, on April 20, 2012, the ALJ determined that Mr. Leek was not disabled during the relevant time frame. (Tr. 16-36). The Appeals Council denied Mr. Leek's request for review, (Tr. 2-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Leek suffered from the severe impairments of history of alcoholic cirrhosis and hepatitis, asthma, tinnitus, bipolar disorder, personality disorder, and history of polysubstance abuse. (Tr. 22). Despite these impairments, the ALJ determined that Mr. Leek retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant must avoid concentrated exposure to rough or uneven terrain. He cannot climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs, stoop, crouch, kneel and crawl. He should avoid concentrated exposure to extreme heat and cold, wetness and humidity and pulmonary irritants. The

---

[1] At the hearing, through counsel, Mr. Leek amended his onset date to June 10, 2010, and, therefore, withdrew his claim for Disability Insurance Benefits, since his date last insured predated his amended onset date. (Tr. 44).

claimant must avoid even moderate exposure to dangerous moving machinery and unprotected heights. He is limited to work with no fine hearing capabilities and without complex verbal communication. The claimant can perform simple, routine and repetitive tasks; in a work environment free of fast-paced production standards; involving only simple, work-related decision-making and with few, if any changes in the work place. The claimant can have occasional interaction with the public and with co-workers.

(Tr. 26). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Leek was able to perform work existing in significant numbers in the national economy, and that he was not therefore disabled. (Tr. 30-31).

Mr. Leek presents three primary of arguments on appeal: (1) that the ALJ should have found his back impairment to be severe at Step Two; (2) that the ALJ erred in weighing the opinions of state agency physicians who considered his records prior to hospitalizations in August of 2011; and (3) that the ALJ assigned inadequate weight to the opinions of his treating medical sources. Each argument lacks merit.

Mr. Leek first argues that the ALJ failed to consider the severity of his back impairment at Step Two of the sequential evaluation. Pl. Mot. 44. An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that his impairment is severe. *Johnson v. Astrue*, No. PWG-10-3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). In support of his contention, Mr. Leek cites to CT scans of his lumbar spine in November 2008 and January 2011, which showed some degenerative changes. Pl. Mot. 6-7, (Tr. 403, 744). However, the accompanying medical records do not reflect any limitation on Mr. Leek's ability to work. The back pain reported in November of 2008 caused pain at a level of 5 out of 10. (Tr. 1172-73). By December of 2008, however, the pain had resolved, and Mr. Leek attributed the temporary back pain to his "job which involved a lot of lifting and carrying of objects." (Tr. 1176). There is a notable absence of any reports of back pain between 2008 and 2011. *See, e.g.,* (Tr. 317) (showing that on June 25, 2010, Mr. Leek had "no acute health concerns and is pain free"); (Tr. 385) (same on September 30, 2009); (Tr. 388) (same on September 4, 2009). Even when back pain is again reported in 2011, it was relieved with ibuprofen. (Tr. 657). Subsequent records show that Mr. Leek experienced minimal pain. *See, e.g.,* (Tr. 983) (record from October 27, 2011, showing only 2 of 10 pain); (Tr. 956) (record from February 16, 2012 showing 3 of 10 pain and no need for pain management). There is simply no record of disabling limitations arising from Mr. Leek's back condition, and the mere existence of certain degenerative changes on CT scans does not indicate a severe impairment impacting a claimant's ability to work. Moreover, even if I were to find that the ALJ erred in her evaluation of Mr. Leek's back impairments at step two, such error would be harmless. Because Mr. Leek made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted Mr. Leek's ability to work. *See* 20 C.F.R. § 404.1523; (Tr. 22) ("There is no evidence the claimant requires any narcotic painkillers for his

back pain and testified that over the counter Advil works fine for him[,] . . . there is no medical evidence that he has ever been treated for this condition on a routine basis.").

Next, Mr. Leek suggests that the ALJ assigned too much weight to earlier opinions issued by state agency reviewers, Drs. Surrusco and Hartman. Pl. Mot. 8-9. Mr. Leek contends that those physicians' opinions did not take into consideration subsequent treatment records during and following his hospitalization in August and September of 2011. *Id.* Certainly, those treatment records were not available to Drs. Surrusco and Hartman, since the physicians' opinions predated the hospitalization. *See* (Tr. 890-902) (Dr. Surrusco's disability determination dated December, 2010); (Tr. 911-23) (Dr. Hartman's, dated July, 2011). However, Dr. Surrusco's and Dr. Hartman's opinions provided insight into Mr. Leek's condition as of the dates of their reports, which well post-dated Mr. Leek's alleged amended disability onset date of June 10, 2010. A medical opinion is no less valid simply because it does not consider developments that may have occurred subsequent to its drafting. Moreover, the ALJ did not rest her entire physical RFC assessment on the opinions of the two non-examining physicians. In addition to the "great weight" assigned to their opinions, she assigned "little weight" (not "no weight") to the opinions of Mr. Leek's treating sources. Finally, the ALJ's opinion specifically addresses Mr. Leek's fragile liver condition, 2011 hospitalizations, and his subsequent recovery, and incorporates restrictions, such as the limitation prohibiting concentrated exposure to rough terrain, to accommodate Mr. Leek's residual problems with balance. (Tr. 26, 27). In addition to the ALJ's narrative marshaling evidence in support of her conclusions, then, the assignments of weight to the various medical sources provide substantial evidence to affirm the ALJ's opinion.

Finally, Mr. Leek protests the assignment of "little weight" to the opinions of his treating sources. Pl. Mot. 9-13. A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig*, 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)). From the outset, it should be stated that this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard.

Mr. Leek first contests the ALJ's failure to acknowledge the 2011 opinion from his treating psychiatrist, Dr. Nusbaum. Pl. Mot. 11. In fact, however, Dr. Nusbaum also countersigned a second opinion in February, 2012, and the ALJ expressly evaluated that report throughout her opinion. (Tr. 24-29). The two Nusbaum opinions, while containing moderate differences, are quite similar in assigning Mr. Leek "poor to no" ability to make most occupational adjustments and "fair" ability to make most personal-social adjustments. *Compare* (Tr. 767-69) *with* (Tr. 1589-91). The one material difference is that the 2011 opinion from Dr. Nusbaum states that Mr. Leek has "unlimited/very good" ability to understand, remember, and carry out simple job instructions, which is entirely consistent with the ALJ's conclusions in the RFC assessment. (Tr. 768). The subsequent opinion, which the ALJ rejected as "overly

*Wayne Leek v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2155
July 2, 2014
Page 4

restricted," found "poor to no" ability to perform those tasks.  (Tr. 24, 1590).  Accordingly, I find no error in the ALJ's failure to expressly address the 2011 opinion from Dr. Nusbaum, as the material points either comported with the eventual RFC assessment or were considered in connection with Dr. Nusbaum's 2012 opinion.

The other two opinions discussed by Mr. Leek are those by CNP Suzanne Harris, as countersigned by Dr. Kumar, and the 2012 opinion countersigned by CRNP Goldberger and Dr. Nusbaum.  Pl. Mot. 11-13.  While the ALJ correctly noted that nurses (and nurse practitioners) are not acceptable medical sources, *see Richardson v. Astrue*, No. SKG–10–614, 2011 WL 3880406, at *8 (D. Md. Aug. 31, 2011) (determining that nurse practitioners are not acceptable medical sources for purposes of treatment as a treating physician), the assignment of little weight to those opinions was not based on the occupations of the authors.  (Tr. 29).  Instead, the ALJ found that the Harris/Kumar opinion was conclusory and did not comport with the "overwhelming objective evidence in this case."  *Id.*  Moreover, the ALJ determined that the Goldberger/Nusbaum opinion contradicted the "treatment notes and objective medical evidence of record."  *Id.*  After a careful review of the entire file,  I cannot find error in the ALJ's weighing of the evidence, because the record contains medical evidence supporting the ALJ's conclusion.  *See, e.g.,* (Tr. 972-73) (noting stable mood and improved gait and communication as of December 19, 2011); (Tr. 969-70) (noting improving memory and use of cane only for balance as of December 28, 2011); (Tr. 1358) (indicating that Nurse Harris would have to confirm with Plaintiff his ability to perform tasks at home).  Accordingly, remand is inappropriate.

For the reasons set forth herein, Mr. Leek's motion for summary judgment (ECF No. 20) will be DENIED and Defendant's motion for summary judgment (ECF No. 24) will be GRANTED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion.  An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge